IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CHRISTINA PRATER,

       Plaintiff,

vs.                              CASE NO. 1:21-cv-86-GRJ

KILOLO KIJAKAZI,
Acting Commissioner
of Social Security,

       Defendant.

_____/

## MEMORANDUM DECISION

*Pro se* Plaintiff, Christina Prater ("Prater"), appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Prater's application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Social Security Income ("SSI") under Title II and Title XVI, respectively, of the Social Security Act (the "Act"). ECF No. 1. The Commissioner has answered, and both parties have filed briefs outlining their respective positions. ECF Nos. 17, 18. The parties have consented to resolution of this case by the undersigned, and the Court has carefully considered the parties' positions. Upon due consideration, the Court affirms the final decision of the Commissioner for the reasons discussed below.

## I.  PROCEDURAL HISTORY

Prater's applications alleged disability beginning January 1, 2015, due to fibromyalgia, osteoarthritis, hyperthyroidism, and anxiety.  See R. 68, R. 71, R. 192-99.   Her applications were denied initially and upon reconsideration. R. 66-139.  Following a hearing held *via* videoconference on June 3, 2019, an administrative law judge ("ALJ") issued an unfavorable decision, finding that Prater was capable of performing sedentary work with additional limitations, including being off-task for ten (10) percent of the workday. R. 7-23.  The Appeals Council denied review.  R. 1-3.  Prater then filed the instant appeal.  ECF No. 1.

In this appeal, Prater lodges three brief complaints.  First, she says that the ALJ was wrong to conclude that she failed to meet or equal a listed impairment.  Second, she disagrees with the ALJ's assessment of the severity of her symptoms.  And third, she believes that the ALJ's finding at step five "twisted" her hearing testimony.  ECF No. 17.

The Commissioner counters that Prater abandoned all her issues on appeal because she failed to brief them or cite to any authority to support her arguments.  ECF No. 18. *See Sorter v. Soc. Sec. Admin.*, *Comm'r,* 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (finding issue abandoned on appeal because plaintiff's brief simply mentioned the issue without

providing any supporting argument) (*citing Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278-79 (11th Cir. 2009) (explaining that "simply stating that an issue exists, without further argument or discussion constitutes abandonment of the issue")).  The Commissioner further argues that, construing Prater's brief liberally, she failed to prove that she met or equaled a listing, and that substantial evidence supports both the ALJ's assessment of the severity of Prater's symptoms and his step-five finding. ECF No. 18 at 6-19.

Upon review of Prater's one-and-a-quarter page brief, the Court concludes that she did, in fact, abandon her issues on appeal.  The brief merely sets forth Prater's three disagreements with the ALJ and nothing more.  ECF No. 17 at 1-2. The only support Prater supplies for her argument that the ALJ erred relates to his sedentary work determination. That argument, however, misreads the vocational expert's testimony.  *See id*. at 2.  Accordingly, the Commissioner's final decision is due to be affirmed.

The Court further concludes that even if Prater had not abandoned her issues on appeal, the Commissioner's decision is due to be affirmed because Prater failed to prove that she met or equaled a listed impairment,

and because the ALJ's symptoms assessment and step-five finding are supported by substantial evidence.

## II.   STANDARD OF REVIEW

The Commissioner's conclusions of law, including applicable review standards, are not presumed valid.  *MacGregor v. Brown*, 786 F.2d 1050, 1053 (11th Cir. 1986) (*citing Wiggins v. Schweiker,* 679 F.2d 1387, 1389 (11th Cir. 1982) quoting *Smith v. Schweiker,* 646 F.2d 1075, 1076 (5th Cir. Unit A June 1981)).  The Commissioner's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal. *Gibson v. Heckler,* 779 F.2d 619, 622 (11th Cir. 1986) (citation omitted); *Bowen v. Heckler,* 748 F.2d 629, 635-36 (11th Cir. 1984); *see Ambers v. Heckler,* 736 F.2d 1467, 1470 (11th Cir. 1984).  Accordingly, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The Commissioner's findings of fact, however, are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2012).

Substantial evidence is more than a scintilla, *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (citation omitted); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (citation omitted). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citations omitted); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) ("[T]he entire record must be scrutinized to determine the reasonableness of the Secretary's factual findings.") (citation omitted); *Parker v. Bowen,* 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (finding that the court must also consider evidence detracting from

evidence on which the Commissioner relied).

## III.  DISABILITY UNDER THE ACT

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1) (2020); 20 C.F.R. §§ 404.1505, 416.905 (2012). The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.  To be non-severe, the impairment must be "a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Parker v. Brown,* 793 F.2d 1177, 1181 (11th Cir. 1986) (citations omitted).

The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) (citation omitted). First, if a claimant is working at a substantial gainful activity, he is not disabled. 20

C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

At the fourth step, the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to his past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004) (*citing* 20 C.F.R. § 404.1520(a)(4)(iv)).  As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments.  20 C.F.R. § 404.1545(a).  Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to his past relevant work under the fourth step; and (2) can adjust to other work under the fifth step. 20 C.F.R. § 404.1520(e).  At the fifth step, if a claimant's impairments (considering his RFC, age, education, and past

work) prevent him from doing other work that exists in the national economy, then he is disabled. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987) (per curiam). The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).[1]

## IV.  SUMMARY OF THE RECORD

### A.  The ALJ's Decision.

The ALJ determined that Prater has the severe impairments of fibromyalgia, rheumatoid arthritis, obesity, gastroesophageal reflux disease, vericose veins, headache symptoms, thyroid nodules, lumbar disc

---

[1] In *Doughty*, the Eleventh Circuit Court of Appeals explained the burden shifting process as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner…. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform…. In order to be considered disabled, the claimant must then prove that she is unable to perform the jobs that the Commissioner lists…. The temporary shifting of the burden to the Commissioner was initiated by the courts and is not specifically provided for in the statutes or the regulations….

> *Doughty*, 245 F.3d at 1278 n.2 (internal citations omitted).

disease, osteoarthritis of the right hip, vervicalgia, neuropathy, osteoarthritis of the left knee, anxiety disorder and depressive disorder. R. 14.  The ALJ further found that Prater does not have an impairment or combination of impairments that meets or equals the Listings.  R. at 14-22. In assessing Prater's Residual Functional Capacity ("RFC"), the ALJ determined that she has the RFC for sedentary work, with additional postural limitations including being off-task up to ten (10) percent of the workday. R. 17.  In assessing the severity of Prater's symptoms, the ALJ concluded that her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the objective medical evidence and other evidence of record.  R. 22.

When examining Prater's capacity to perform her past relevant work as a cashier checker and customer service clerk, the ALJ concluded she could not do so because the demands those jobs exceeded her RFC.  *Id.* at 22.  Based upon the testimony of a Vocation Expert ("VE"), the ALJ found in light of Prater's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Prater can perform, such as Lamp Shade Assembler, Carding Machine Operator, and Table Worker.  R. 23-24.  As a result, the ALJ found that Prater was not disabled within the meaning of the Act.  R. 24.

**B.  Medical and Opinion Evidence.**

Based on his review of the entire record, the ALJ summarized his

review of the medical evidence as follows:[2]

> Treatment notes from January 2018 reflect that [claimant] was
> treated conservatively with prescribed medication for her
> [fibromyalgia] symptoms.  Examination revealed mildly impaired
> short-term memory, but otherwise normal physical and mental
> findings.  The claimant was advised to control her diet and
> exercise regularly due to her obese status.
>
> In January of 2018, the claimant established care at Chiefland
> Medical Enter.  She reported fibromyalgia pain, improving with
> amitriptyline.  Examination normal respiratory, cardiovascular
> and psychiatric findings.  The claimant did not exhibit an
> antalgic gait.  The claimant was prescribed medications for her
> symptoms and was advised to walk 30 minutes a day for
> exercise.  During a follow-up exam in February 2018, laboratory
> testing results were negative for significant abnormalities and
> the claimant reported improved pain control with medication.
> Examination revealed no impairments.
>
> During a gynecological exam in March 2018, …[Prater]
> appeared healthy and in no acute distress, with normal heart
> and lung sounds, a non-tender abdomen, 5/5 strength, normal
> ranges of motion, no pain or crepitus, normal ambulation, no
> sensory deficits and normal psychiatric findings.
>
> In May 2018, the claimant reported symptoms of anxiety,
> fatigue, poor sleep and intermittent memory problems.  The
> claimant reported low back and upper extremity pain and
> swelling.  She also reported bilateral lower extremity pain due
> to vericose veins and was advised to use compression
> stockings.  Examination revealed fibromyalgia tender points in
> the claimant's hands and wrists, some limited elbow motion,
> normal wrist and shoulder motion, normal gait and no joint

---

[2] Prater does not dispute the accuracy of the ALJ's summary of the medical evidence.

effusion…. The claimant's intermittent joint pain and swelling were attributed to soft tissue injuries from hypermobile joints.

Examination on October 2018 revealed no functional or cognitive impairments.  The claimant was noted to have normal respiratory, cardiovascular, lymphatic and psychiatric findings. She continued on her medication.

The claimant was referred to occupational therapy in December 2018 due to ongoing complaints of bilateral hand pain.  The claimant reported that she was independent with feeding, grooming, upper and lower extremity dressing, bathing, and toileting but reported pain and limited endurance in these activities.  Examination revealed moderate wrist edema, wrist tenderness and upper extremity joint hypermobility.  An occupational therapy plan was devised to address these deficits.

During examination in March 2019, the claimant reported symptoms of enlarged lymph nodes and constipation. Examination revealed no functional or cognitive impairments with positive bowel sounds, a non-tender abdomen and normal respiratory, cardiovascular and psychiatric findings.  The claimant was diagnosed with gastroesophageal reflux disease without esophagitis, constipation and mildly positive rheumatoid arthritis… based on the presence of joint pain, CCP positive (23, N:0-19), CPR elevation and clinical synovial thickening. She was treated conservatively with medication.

Primary care notes from April 2020 reflect… no functional cognitive impairment….

The claimant was treated at the University of Florida Rheumatology Clinic.  Treatment notes from April 2020 reflect improved intermediate and small joint pain since mid-2019 with methotrexate treatment…. She was diagnosed with rheumatoid arthritis of multiple sites with negative rheumatoid factor, polyarthralgia and fibromyalgia.  She was continued on her medication regimen and advised to exercise and monitor her diet.

Treatment notes from September 2020 reflect a positive urine drug screen for marijuana.  The claimant reported that she smoked marijuana for anxiety symptoms.  She reported ongoing back and joint pain.  A lumbar spine MRI study revealed disc protrusion and annual tear at L4-5.  An x-ray study of the bilateral hips revealed femoroacetabular impingement and hip osteoarthritis.  She was continued on her medication regimen and advised to undergo hip pain injections.

R. 18-20.

With respect to opinion evidence, the ALJ noted that "no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment" for any of Prater's conditions.  R. 14.  The state agency reviewing doctors found that Prater's medical impairments were severe, but her mental impairments were moderate.  R. 70, R. 81, R. 106.  In assessing Prater's vocational factors, the reviewing state agency concluded that Prater was capable of performing medium work as a Caretaker, Coffee Maker or Sandwich Maker.  R. 112.  The ALJ found the opinions of the agency reviewers "partially persuasive" because they were consistent with the medical evidence as a whole.  R. 22. To ensure compliance with SSR 98-8p, and in part based on Prater's hearing testimony, the ALJ included additional exertional and non-exertional limitations to Prater's RFC "to address waxing and waning mental impairment symptoms." *Id*.

### C.  Hearing Testimony.

Prater was thirty-three (33) years old at the time of the hearing

decision.  ECF No. 18.  At the hearing, she testified that she last worked in

July of 2016 when she was terminated by Walmart because she missed too

much work due to health issues.  R. 40.  Prater's full-time job at Walmart

was as a cashier and customer service representative.  Those jobs

required that Prater be on her feet for her shift, resulting in swelling and

other problems with her legs.  R. 41.  Prater testified that she suffers pain

throughout the day and that she struggles to do the bare minimum to take

care of her three (3) children, ages four (4) to fifteen (15).  Prater also

testified that medication reduces her pain, but that she still cannot hold a

pencil to write due to hand cramping, nor can she climb even a few stairs

without feeling that her legs will give out.  R. 44-45.

Prater testified that she can sit for five (5) to ten (10) minutes before

having to change position, she can stand for ten (10) to fifteen (15) minutes

before needing to sit down, and she can walk slowly for about fifteen (15) to

twenty (20) minutes without taking a break.  R. 51.  She can lift twenty (20)

to thirty (30) pounds but carrying something for any amount of time causes

her pain.  *Id*.

Prater testified that although she still cooks meals for her family, she cooks only simple basic meals because it hurts when she stirs the cooking pot or washes the dishes.  R. 47.  She testified that her typical day consists of taking her children to school then picking them up afterwards. In between drop-off and pick-up, she does the bare minimum of cleaning, taking a break, then cleaning again.  R. 54.  Her older children also help with household chores.  R. 55.  Occasionally, Prater does laundry, visits her mother and sisters, or talks on the telephone while she is resting.  R. 55, 57-58.

During the testimony of the VE, the ALJ posed a hypothetical that assumed an individual of the same age and education as Prater with the RFC for light work with certain postural, exertional, and mental limitations, including being off-task for ten (10) percent of the workday.  R. 60.  The VE testified that such a person could not perform Prater's past work but could perform other unskilled work at the sedentary level that exists in significant numbers in the national economy including Lamp Shade Assembler, Carding Machine Operator, and Table Worker.  R at 61.  The VE then testified that with an additional limitation such that a person would be off-task at least fifteen (15) percent of the workday, such person would be unemployable.  R. 62.

# V.  DISCUSSION

## A.    Prater failed to prove that her impairments met or equaled a Listing.

As the Commissioner correctly points out, Prater had the burden of proving that her impairments alone, or in combination, met or equaled a listed impairment.  *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (per curiam) (*citing* 20 C.F.R. § 404.1526(a)).  An impairment—no matter how severe— that meets only some of the Listing requirements does not qualify.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

In finding that Prater's impairments did not meet or equal a listed impairment, the ALJ considered the following listings: 1.00 (Musculoskeletal System), 5.00 (Digestive System), 11.00 (Neurological System), and the mental disorder Listings 12.04 (Depressive, bipolar and related disorders) and 12.06 (Anxiety and obsessive-compulsive disorders). R. 14.  In her appeal, Prater states that:

> My argument will show my health issues and impairments do meet or medically equal the severity of more than one of the listed impairments.  They also stated my mental impairments,

> considered singly and in combination, do not meet or medically
> equal the criteria of listings 12.04 and 12.06, and that
> "paragraph B" criteria was not satisfied.  To satisfy "paragraph
> B" criteria, the mental impairments must result on one extreme
> limitation or two marked limitations in a broad area of
> functioning…. some statements (they made of what I said) were
> flat out twisted to make the ratings less extreme and to make
> sure the criteria of two marked limitations were not met.

ECF No. 17 at 1.  Here, Plaintiff fails to identify what medical Listing she believes were met or equaled. Presumably, Prater objects to the ALJ's findings as to all the Listings he considered. But, because the Court cannot ascertain what medical Listing is being challenged, Prater has waived the issue.

Similarly, as for Prater's disagreement with the ALJ's determination regarding the mental health Listings 12.04 and 12.06, Prater does not disclose which of her statements she thinks the ALJ misconstrued.  So, this issue is also waived. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones…. Judges are not expected to be mindreaders.  Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (citations and internal quotation marks omitted).

In sum, the Court concludes that Prater abandoned any challenge to the ALJ's determination that she failed to prove that she met or equaled a listed impairment for lack of specificity and development.  *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam) ("issues not briefed on appeal by a *pro se* litigant are deemed abandoned") (citation omitted).

And, as the ALJ pointed out, "no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment" for any of Prater's conditions.  R. 14.  Thus, Prater failed to meet her burden of proving that her impairments qualified under the Listings.  Accordingly, the ALJ did not err here.

**B.    Substantial evidence supports the ALJ's symptoms assessment.**

As for Prater's challenge to the ALJ's assessment of the severity of her symptoms, the Court should "not disturb a clearly articulated credibility finding supported by substantial evidence[.]" *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (*citing Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)).  In evaluating the intensity and persistence of a claimant's symptoms, the ALJ must consider all the evidence regarding the reasonableness of a claimant's symptoms and the effect of those

symptoms upon the claimant's work. 20 C.F.R. §§ 404.1529(c)(1),

416.929(c)(1); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

The ALJ in this case concluded that Prater's medically determinable

impairments could reasonably be expected to cause her alleged symptoms,

but that Prater's statements concerning the intensity, persistence and

limiting effects of her symptoms were not entirely consistent with the

medical evidence and other evidence in the record. R. 21. In support of

that finding, the ALJ first pointed out the inconsistency between Prater's

allegations of the severity of her symptoms compared to her testimony

about the daily activities she engages in such as doing minimal household

chores, getting her children ready for school, taking her children to school,

picking them up from school, shopping for groceries, and preparing daily

meals. *Id*. The ALJ further noted that Prater testified that she occasionally

took her children to the springs, went to the movies, and went out to eat.

*Id*.

Next, the ALJ found that Prater's statements about the severity of her

symptoms were not supported by the medical evidence in the record.

"Although claimant has received treatment for the allegedly disabling

impairments, that treatment has been essentially routine and conservative

in nature…. Additionally, when the claimant is maintained on her

medication, her symptoms have improved significantly, according to both her subjective reports and the object evidence documented during those times." R. 22. After due consideration and a review of the relevant portions of the record, including Plaintiff's testimony, the Court concludes that the ALJ's assessment regarding the severity of Prater's symptoms is supported by substantial evidence.

## C.     Substantial evidence supports the ALJ's step-five finding.

Prater's final challenge relates to the ALJ's determination that she can perform sedentary work with some additional limitations. At step five, the ALJ found that Prater would be expected to be off-task up to ten (10) percent of the workday, which was supported by the VE testimony.[3] R. 17. Prater generally complains that "at step five of the sequential evaluation process some of the statements were greater than what I can do on a regular basis[.]" ECF No. 17 at 1-2. Prater does not, however, specify what statements she thinks are erroneous, or why. Without that information, the Court cannot address any alleged error committed by the ALJ. *See Chacon v. Astrue*, No. CV-12-533-WPL, 2012 WL 13071872, at *2 (D.N.M. Nov. 19,

---

[3] At the hearing, the VE testified that even with the limitation of being off-task ten (10) percent of the workday, there are jobs in the national economy that such a person could perform. R. 61-62.

2012) (refusing to review entire record to search for ALJ error where plaintiff did not articulate reasons why the ALJ erred).  Moreover, in one throw-away line at the end of Prater's brief, she says, "The vocational expert stated that… I would be off task 15% and would not be able to maintain competitive employment with that limitation."  ECF No. 17 at 2. Here, Prater misconstrues the VE's testimony.  The VE did not testify that *Prater* would be off-task fifteen (15) percent of the workday, which would make her unemployable.  Rather, the VE testified hypothetically that if a person were to be off-task fifteen (15) percent of the workday, then that person would be unemployable.  *See* R. 62.  The ALJ did not find that Prater would be off-task fifteen (15) percent of the workday.  So, the VE's testimony about a hypothetical person's being off-task fifteen (15) percent of the workday does not inform Prater's ability to obtain employment.

In view of the foregoing, and based upon its own review of the record, the Court concludes that the ALJ's step-five finding is supported by substantial evidence.

## VI.  CONCLUSION

For all the reasons discussed above, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter final judgment

in favor of the Commissioner and then close the file.

**DONE AND ORDERED** this 21st day of July 2022.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge